IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MY OWN MEALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 0892 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| PURFOODS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendant has moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(2) for lack of

personal jurisdiction. For the following reasons, the defendant's motion [Dkt. #10] is granted insofar

as this case is dismissed and terminated, but defendant's request that dismissal be with prejudice is

denied.

**I.**

The plaintiff alleges that it is a Delaware corporation with its principal place of business in

Illinois. [Dkt. #1, ¶ 1]. Defendant is an Iowa corporation with its principal place of business in

Iowa. [Dkt. #1, ¶ 1]. Plaintiff owns trademarks on the word mark "My Own Meals" and the design

mark "My Own Meals" with a silhouette of two children at a table. [Dkt. #1-1]. Defendant holds

trademarks on the word mark "Mom's Meals" and the design mark containing "Mom's Meals" and

a spoon. [Dkt. #1, ¶¶ 24-26, 28-29]. According to plaintiff, it has been using the word/ abbreviation

"MOM" in connection with its products since the mid-1980s. [Dkt. #1, ¶¶ 18-22, 37]. But, plaintiff

had no registration on "MOM." When plaintiff finally filed an application to register "M.O.M." in

July 2019, it was refused due to likelihood of confusion with defendant's marks. [Dkt. #1, ¶¶ 23,

30-32]. Plaintiff filed an opposition and a petition for cancellation of defendant's marks on March 12, 2020, and again on January 20, 2002. [Dkt. #1, ¶¶ 33-35]. On or about January 14, 2022, counsel for defendant sent a "cease and desist" letter to plaintiff, complaining that plaintiff's use of "MOM", "M.O.M.", and "MOM MEAL" was virtually identical to its client's trademark "MOM'S MEALS". Plaintiff responded by filing this suit for declaratory relief in the Northern District of Illinois.

The preliminary issue, however, is personal jurisdiction. Here is the Complaint's jurisdictional allegation:

> This court has personal jurisdiction over Defendant since Defendant purposefully availed itself of such jurisdiction by sending a cease-and-desist letter within this district, wherein Defendant asserted infringement of various intellectual property rights and also by virtue of certain correspondence between the parties in which Defendant threatened to take action if Plaintiff continued to use its trademark.

[Dkt. #1, ¶ 6].[1] Plaintiff attached that January 2022 cease-and-desist letter to its Complaint. {Dkt. #1-4]. It turns out that there was a much earlier cease-and-desist letter from defendant – dated September 18, 2019 – in response to an August 27, 2019 inquiry from plaintiff as to whether defendant would cease using its "MOM" trademark. [Dkt. #20-2]. Plaintiff apparently complied at that time, until, apparently, sometime around 2022. [Dkt. #20-3]. Once defendant – not surprisingly, based on plaintiff's Complaint – challenged personal jurisdiction, the plaintiff came up with this second letter and attached it to its response brief. [Dkt. #1, ¶ 6; #20, at 6, 9; ##20-2, 20-3].

---

[1] A week after this matter had been fully briefed, and nearly two months after defendant had filed its motion to dismiss, the plaintiff filed an Amended Complaint [Dkt.#22] without leave from the court in violation of Fed. R. Civ. P. 15(a)(1). *See Martensen v. Chicago Stock Exch*., 882 F.3d 744, 745 (7th Cir. 2018)("Every plaintiff is entitled to file one amended complaint *within 21 days of* the original complaint, an answer, or *a motion to dismiss*."(emphasis added)). Plaintiff thought better of the idea about three hours later and moved to withdraw the Amended Complaint. [Dkt. #23]. Thus, the Amended Complaint is stricken, and plaintiff's "Notice of Withdrawal of the Amended Complaint" [Dkt. #23] is granted.

## II.

The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. Nearly eighty years ago, the Supreme Court held that a court's authority depends on the defendant's having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945). Since then, the Court has focused on the nature and extent of "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. ——, ——, 137 S.Ct. 1773, 1779 (2017)(citing cases). As a result, the Court has recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, – U.S. –, –, 141 S. Ct. 1017, 1024–25 (2021); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011).

## A.

Obviously, a defendant is subject to general jurisdiction in its place of domicile; for a corporation that means its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). As such, general jurisdiction over the defendant here would attach in Iowa or Delaware, not Illinois. But the Supreme Court has indicated that this general rule does "not foreclose the possibility that in an exceptional case, . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*, 571 U.S. at 139 n. 19 (quoting *Goodyear Dunlop Tires*, 564 U.S. at 919). While the plaintiff has not alleged the court has general jurisdiction over the defendant [Dkt. #1, ¶ 6], it claims in its response

brief that general jurisdiction applies because defendant has registered its corporation in Illinois and maintains a website on the internet. [Dkt. #20, at 4-5]. The argument is not persuasive.

The only case plaintiff relies on to support its contention, *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), specifically stressed that "[t]he threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* at 701. It cannot reasonably be thought that a website, which is common place in modern society, and the mere registration of an agent clear that "high" threshold. A website certainly does not do it; if it did, jurisdiction would be all but universal. *See Tamburo*, 601 F.3d at 701 ("Nor is the maintenance of a public Internet website sufficient, without more, to establish general jurisdiction."). *See also Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 699 (7th Cir. 2015); *Snodgrass v. Berklee Coll. of Music*, 559 F. App'x 541, 542 (7th Cir. 2014)(collecting cases). Neither does a registered agent. *See Hub Group, Inc. v. Go Hub Group Holdings*, No. 19-CV-7648, 2021 WL 4264349, at *3 (N.D. Ill. Sept. 20, 2021)(collecting cases); *Tirado v. Bank of Am., Nat'l Ass'n*, No. 18-CV-5677, 2019 WL 4694990, at *4 (N.D. Ill. Sept. 26, 2019); *McClellan v. CSX Transportation, Inc.*, 2018 WL 6192192, at *2 (N.D. Ill. 2018). "'[T]he commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity,'" but that "is today called "specific jurisdiction." *Daimler AG*, 571 U.S. at 127. General jurisdiction, again, requires that a defendant's contacts with the forum state be "so continuous and systematic" that it can fairly be considered "at home" in Illinois. *BNSF Ry. Co. v. Tyrrell*, – U.S. –, –, 137 S. Ct. 1549, 1558 (2017); *Daimler AG*, 571 U.S. at 127 n. 19; *Goodyear Dunlop Tires*, 564 U.S. at 919. The situation here is governed by these consistently followed precepts and perhaps explain why the Complaint did not

even allege general jurisdiction.

**B.**

That leaves specific jurisdiction. Specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims. *Ford Motor Co.*, – U.S. at –, 141 S. Ct. at 1024. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). For specific jurisdiction to attach, the defendant must commit "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous," and they must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. *Ford Motor Co.*, – U.S. at –, 141 S. Ct. at 1025 (quotations omitted).

Even then, the plaintiff's claims, "must arise out of or relate to the defendant's contacts" with the forum. *Bristol-Myers*, 582 U. S., at ——, 137 S.Ct., 1780 (quoting *Daimler*, 571 U.S., at 127, 134 S.Ct. 746). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U. S., at —— - ——, ——, 137 S.Ct., at 1780 (quoting *Goodyear*, 564 U.S. at 919). As the Supreme Court has recently explained, these requirements:

> derive from and reflect two sets of values—treating defendants fairly and protecting "interstate federalism." Our decision in *International Shoe* founded specific jurisdiction on an idea of reciprocity between a defendant and a State: When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may

5

hold the company to account for related misconduct. Later decisions have added that our doctrine similarly provides defendants with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

*Ford Motor Co.*, – U.S. at –, 141 S. Ct. at 1025 (quotation and citations omitted). Exercising jurisdiction over the defendant here in Illinois, based on what is alleged in the Complaint – or even what plaintiff added in its response brief – would run afoul of these notions, and especially cut against those values of fairness and protection of federalism.

All the defendant did here, according to the Complaint (*and the* response brief), was to have sent the plaintiff two cease-and-desist letters. It is hard to imagine activity more isolated and fortuitous than that. It only happened because plaintiff began using the "MOM" abbreviation for My Own Meals and defendant ran across it. The plaintiff cannot be the only link between the defendant and the forum. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Moreover, "[a] person should not be haled into the courts of a state unless he has purposefully availed himself of the protection of the laws of that jurisdiction. The question is not whether the plaintiff experienced a particular injury or effect in the forum state but whether the defendant's conduct connects him with the forum in a meaningful way." *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021). It seems a stretch – to say the least – to conclude that a defendant, learning of a plaintiff supposedly treading on its trademark rights and asserting those rights in a letter has purposely availed himself of any privileges or of any of the laws and protections of the allegedly offending party's home state. Were the rule otherwise, a person seeking to protect federal rights by means of a letter or communication with the alleged "wrongdoer" would subject himself to the laws of the foreign state no matter that his only contact with the state consisted of the single communication with the claimed wrongdoer

– designed to stop the alleged wrongdoing. Basic notions of fair play recoil at such a theory of due process.

Even if the cease-and-desist letters satisfied the minimum contacts requirement, court after court, both here and elsewhere, has rejected the argument that such activity – while it arguably gives rise to a plaintiff's declaratory judgment action – is enough for special jurisdiction over a defendant. *See, e.g., C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1324 (10th Cir. 2019)(trademark cease-and-desist letter not a proper basis for jurisdiction in a declaratory judgment action); *Kroto Inc. v. Chapa*, No. 17 C 1218, 2017 WL 2692122, at *2 (N.D. Ill. June 22, 2017)("Defendants sent cease and desist letters and engaged in copyright enforcement activity to protect their rights under the law. . . . [such activities] fail to meet [plaintiff's] prima facie burden demonstrating the existence of personal jurisdiction. In addition, subjecting Defendants to litigation in this forum, under these circumstances, would offend traditional notions of fair play and substantial justice and would be inconsistent with the 14th Amendment Due Process Clause."); *Classic Golf Co. v. Karsten Manufacturing Co.*, 1986 WL 8953, at *1 (N.D. Ill. 1986)("The sending of infringement letters has been uniformly held insufficiently by itself to satisfy the minimum contacts requirement."); *Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 944 (Fed. Cir. 2015)(". . . sending cease-and-desist letters to [plaintiff] in California is insufficient to establish personal jurisdiction."); *Virgin Health Corp. v. Virgin Enterprises Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010)(cease-and-desist letter insufficient to confer jurisdiction). The problem with grounding jurisdiction on one or two cease-and-desist letters is one of fairness. As the Federal Circuit has explained in the patent context:

> Thus, even though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the "minimum requirements inherent in the concept of 'fair play and substantial justice' ... defeat the reasonableness of jurisdiction." Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998).

> More recently, the Ninth Circuit put it this way:

> There are strong policy reasons to encourage cease and desist letters. They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation. If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006).

Accordingly, it would be improper to exercise personal jurisdiction over the defendant here.

Plaintiff asserts that factors like burden on the defendant, Illinois's interest in the case, plaintiff's interest in a convenient forum, etc., trump the foregoing analysis. [Dkt. #20, at 11-12]. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). They don't. First of all, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen*, 444 U.S. at 294. That is certainly the case here. But even when the factors plaintiff asserts are considered, it turns out that

they do not favor exercising personal jurisdiction like plaintiff has contended.

Plaintiff asserts that the burden on the defendant in defending against plaintiff's lawsuit here is "slight" because of "the remote capabilities that exist allow for greater ease and ability for counsel to be present." [Dkt. #20, 11]. One suspects plaintiff only thinks the burden is slight because plaintiff and its lawyers are already here. Defendant, a small company with limited resources and by no means the equivalent of Ford Motor Company, *Ford Motor Co.*, – U.S. at –, 141 S. Ct. at 1028, or a GoDaddy, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010), has already had to double up on attorneys and hire local counsel. And while Zoom and Teams got the legal world through the toughest times of the pandemic, it was not without glitches and tribulations – and never was intended to supplant basic constitutional considerations or requirements – or even preferences about live proceedings. *See, e.g., Almonacid v. Cessna Aircraft Co.*, 2012 WL 1059581 (D.Kan. 2012); *Macronix International Co. v. Spansion*, 2014 U.S. Dist. LEXIS 31452 AT *8-9 (E.D.Vir. 2014)(discussing preference for in-person testimony). I, like other judges, regularly hear complaints from attorneys about the limitation of such technology and have had to consider request after request that hearings of depositions be conducted live – often without sufficient regard by counsel of the effect of the pandemic on the health and the very lives of those participating in litigation. *Smid v. Molex, LLC*, 2020 WL 6132221 (N.D.Ill. 2020). And those challenges were borne on *both sides* equally.

Moreover, while plaintiff's argument is inspired by the pandemic forcing attorneys and courts to embrace the internet as a means of conducting hearings and depositions, it is nevertheless an old argument that courts have heard for years – and rejected for more than half a century:

9

> progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714, to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310. *But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.* Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.

*Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958)(Emphasis supplied). The Supreme Court has time and again made it luminously clear that restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017). The arguments, which seek to impose personal jurisdiction over the defendant in this case, are, at bottom, a rejection of the Supreme Court's teachings that have governed our jurisprudence for more than a half century. We are not at liberty, nor should we, to ignore the limitations of the Court's teachings.

Plaintiff also submits that Illinois has a significant interest in adjudicating this dispute. But, as the defendant points out, this isn't some state law tort case where the purported harm flows one way, from a defendant in one state to a plaintiff in another, which is the example plaintiff relies upon in citing *Tamburo v. Dworkin*. It's a federal law trademark case and both plaintiff *and* defendant have claims of suffering harm. As such, Illinois's interests in the law and redress are no different than Iowa's. And, finally, plaintiff's interests in convenient relief are no more compelling than defendant's interests in not being hailed into court in another state for having sent a cease-and-desist letter. In any event, so significant a matter as personal jurisdiction is not to be governed or defined by notions of convenience. Constitutional standards are neither defined nor governed by considerations of convenience. *Cf. Oklahoma Natural Gas Co. v. Russell,* 261 U.S. 290, 293

10

(1923)(Holmes, J.)("Rules of comity or convenience must give way to constitutional rights"); *O'Clair v. United States*, 470 F.2d 1199, 1204 (1st Cir. 1972). And "neither tradition nor convenience justify constitutional infirmity." *United States v. Lowndes County Board of Education*, 878 F.2d 1301, 1307 (11th Cir. 1989); *Board of Education v. Libertarian Party of Illinois*, 591 F.2d 22, 28 (7th Cir. 1979)("Administrative convenience must surrender to constitutional considerations.").

## CONCLUSION

Accordingly, the defendant's motion [Dkt. #10] is granted, the plaintiff's Complaint is dismissed for lack of personal jurisdiction, and this case is terminated. But defendant's request that the dismissal be with prejudice cannot be granted. A dismissal for lack of personal jurisdiction "is without prejudice, because the federal court has not decided the merits." *Carter v. Buesgen*, 10 F.4th 715, 724 (7th Cir. 2021)(Easterbrook, J., concurring). *See also Lauderdale-El v. Indiana Parole Board*, – F.4th –, 2022 WL 1613282 at *3 (7th Cir. 2022); Fed.R.Civ.P. 41(b). Plaintiff may sue defendant in another court with jurisdiction over both the claims and the parties, but just not here. *Colucci v. Whole Foods Mkt. Servs., Inc.*, No. 19-CV-8379, 2021 WL 1222804, at *5 (N.D. Ill. Apr. 1, 2021); *John Crane Inc. v. Shein L. Ctr., Ltd.*, No. 16-CV-05913, 2017 WL 1105490, at *9 (N.D. Ill. Mar. 23, 2017). The plaintiff's motion to withdraw its Amended Complaint [Dkt. #23] is granted and the Amended Complaint [Dkt. #22] is stricken.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/14/22

11